UNITED STATES DISTRICT COURT
DISTRICT OF NEW HAMPSHIRE


Bel-Air Nursing and Rehab Center,
Inc.

     v.                                        Civil No. 16-cv-259-JL
                                                  Opinion No. 2018 DNH 001
Town of Goffstown, New Hampshire &
Goffstown Zoning Board of Adjustment



**MEMORANDUM ORDER**


     Plaintiff Bel-Air Nursing and Rehab Center, Inc. claims that
the Town of Goffstown and its Zoning Board of Adjustment[1]
violated its federal constitutional rights to due process and
equal protection when it denied Bel-Air's application for a
permit or variance to place a sign on its property.  Both denials
were upheld by the New Hampshire Superior Court.  The State
Supreme Court affirmed the variance ruling; Bel-Air did not
appeal the permit ruling.  Invoking Fed. R. Civ. P. 12(b)(6),
Goffstown argues that plaintiffs' claims are barred in whole or
in part by the Rooker-Feldman doctrine,[2] res judicata and

_____

[1] For convenience, the court refers to the defendants
collectively as "Goffstown" or "the ZBA."

[2] The Rooker-Feldman doctrine prevents federal district courts
from exercising jurisdiction over "cases brought by state-court
losers complaining of injuries caused by state-

collateral estoppel, and that Bel-Air's Amended Complaint fails
to state a claim for constitutional violations.  After reviewing
the parties' submissions and the relevant state court decisions,
and conducting oral argument, the court finds that the factual
and legal allegations Bel-Air levies in this case were
conclusively resolved against it in the state court and are thus
barred by res judicata or collateral estoppel.  Alternatively,
the allegations in the Amended Complaint fail to establish either
a due process or equal protection violation.[3]  Goffstown's motion
to dismiss is therefore granted.

## I.   <u>Applicable legal standard</u>

To state a claim for relief and withstand a motion to
dismiss, the plaintiff must plead "factual content that allows
the court to draw the reasonable inference that the defendant is
liable for the misconduct alleged."  <u>Martinez v. Petrenko, 792</u>

---

court judgments rendered before the district court
proceedings commenced and inviting district court review and
rejection of those judgments."  <u>Tompson v. N.H. Dep't of Health
and Human Servs.</u>, No. 16-2010 (1st Cir. Dec. 5, 2017) (quoting
<u>Exxon Mobil Corp. v. Saudi Basic Indus. Corp., 544 U.S. 280, 284
(2005)</u>); <u>see also</u> <u>D.C. Ct. of Appeals v. Feldman, 460 U.S. 462
(1983)</u>; <u>Rooker v. Fidelity Trust Co., 263 U.S. 413 (1923)</u>.

[3] In light of these findings, the court does not reach the
defendant's arguments premised on the <u>Rooker-Feldman</u> doctrine.

F.3d 173, 179 (1st Cir. 2015).  In ruling on such a motion, the court accepts as true all well-pleaded facts set forth in the complaint and draws all reasonable inferences in the plaintiff's favor.  See, e.g., Martino v. Forward Air, Inc., 609 F.3d 1, 2 (1st Cir. 2010).

The court "may consider not only the complaint but also facts extractable from documentation annexed to or incorporated by reference in the complaint and matters susceptible to judicial notice."  Rederford v. U.S. Airways, Inc., 589 F.3d 30, 35 (1st Cir. 2009) (internal quotations omitted).  The court "need not, however, credit bald assertions, subjective characterizations, optimistic predictions, or problematic suppositions," and "[e]mpirically unverifiable conclusions, not logically compelled, or at least supported, by the stated facts, deserve no deference."  Sea Shore Corp. v. Sullivan, 158 F.3d 51, 54 (1st Cir. 1998) (internal quotations omitted).  In addition to relating the allegations in the Amended Complaint, the court also culls background facts from the judicial findings during the parties' prior proceedings.  See Kowalski v. Gagne, 914 F.2d 299, 305 (1st Cir. 1990) ("It is well-accepted that federal courts may take judicial notice of proceedings in other courts if those proceedings have relevance to the matters at hand.")

Guided by these standards, the court turns first to Bel-Air's allegations and the prior proceedings.

## II.  **Factual background**

### A.    The first application

Plaintiff operates a nursing home in Goffstown.  The property is zoned for commercial uses, but is surrounded by residentially-zoned lots.  In 2013, Bel-Air sought to erect a new, internally-illuminated sign on its property to replace two older signs.[4]  The new sign would be roughly the same height as one of the old ones, but would have a programmable LED display instead of illumination from external lights at its base, as the former signs had utilized.

The relevant Goffstown zoning ordinance prohibits internally-illuminated signs within 250 feet of a residential district boundary, a demarcation that encompassed Bel-Air's property; Bel-Air proposed to erect the sign within 60 feet of the boundary.[5]  Accordingly, Bel-Air applied for a variance.

---

[4] Amended Complaint, doc. no. 10, ¶10.

[5] Specifically, within the 250 foot range, "[a]ny sign . . . shall only be illuminated by a shielded external white light.  No internal illumination is permitted."  Zoning Ordinance for Goffstown, New Hampshire, Section 6.6.3.

The ZBA held three hearings on the variance application. One abutter spoke in favor of the sign, while several expressed concern that the sign would reflect a commercial nature out of touch with the residential character of the neighborhood. Bel-Air asserted that the proposed sign would be less intrusive than its existing signs, and that no variance would be necessary for it to construct significantly larger versions of its existing, externally-illuminated signs.

In December 2013, the ZBA denied Bel-Air's application, finding that it had not established that enforcement of the ordinance would result in an "unnecessary hardship," as required by N.H. Rev. Stat. Ann. § 674:33 I(b)(5).[6]

After the ZBA denied its petition for rehearing, Bel-Air appealed to the New Hampshire Superior Court. See N.H. Rev.

---

[6] The statute further provides that:

> [An] "unnecessary hardship" means that, owing to special conditions of the property that distinguish it from other properties in the area:
>
> (i) No fair and substantial relationship exists between the general public purposes of the ordinance provision and the specific application of that provision to the property; and
>
> (ii) The proposed use is a reasonable one.

N.H. Rev. Stat. Ann. § 674:33 I(b)(5)(A)(i) and (ii).

[Stat. Ann. § 677:4](#).  In addition to arguing that the ZBA incorrectly decided the hardship issue, Bel-Air asserted that the ZBA decision should be reversed due to an alleged conflict of interest wherein one board member owned a sign company that competed with the sign company that Bel-Air engaged to construct its proposed sign.  Bel-Air also argued that the ZBA decision violated its constitutional rights to equal protection and due process because other businesses on commercial lots in Goffstown were allowed to install internally-illuminated signs.[7]

The Superior Court rejected all of Bel-Air's arguments and affirmed the ZBA's decision.[8]  First, the Court found no conflict of interest, as Bel-Air failed to demonstrate how the board member's company would benefit from denying the variance.  The Court also noted that Bel-Air was not generally prohibited from constructing any sign and that it had later received approval for a different sign designed by the same contractor hired to construct the proposed sign.[9]

---

[7] It is unclear from the record whether Bel-Air asserted its rights under the state or federal constitutions, or both.

[8] Bel-Air Nursing Home & Rehab Ctr., Inc. v. Goffstown Zoning Bd. Of Adjustment, No. 216-2014-CV-00054 (N.H. Super. Dec. 1, 2014) (Brown, J.) ("Bel-Air I").

[9] Bel-Air I, at 4.  The Superior Court Order did not specify the location of the later-approved sign.  That information is not

The Superior Court next rejected Bel-Air's argument that the
ZBA erred in finding that it failed to establish an unnecessary
hardship, as required by state law.  The Court noted that the
stated purpose of the Goffstown ordinance was related to
aesthetics, and that Bel-Air had claimed that there was no
evidence before the ZBA that the proposed sign would have a
negative aesthetic impact.  As the Court noted, however, several
abutters testified as to the proposed sign's negative aesthetic
impact, and such an impact is enough, even standing alone, to
support the ZBA's decision.[10]  Accordingly, the Court found that
there was a "fair and substantial relationship" between the
ordinance and its application to Bel-Air, as required by N.H.
Rev. Stat. Ann. § 674:33(I)(5)(A)(i).[11]

The Superior Court also rejected Bel-Air's constitutional
due process and equal protection claims, finding that Bel-Air was

---

relevant for purposes of this ruling, however, as it is only
offered to demonstrate the state Court's resolution of Bel-Air's
conflict of interest argument.

[10] Id. at 6 (citing Asselin v. Town of Conway, 137 N.H. 368, 371-
72 ("We now conclude that municipalities may validly exercise
zoning power solely to advance aesthetic values, because the
preservation or enhancement of the visual environment may promote
the general welfare.")).

[11] Id.

not similarly situated to other businesses that it claimed received favorable treatment. The putative comparators, the Court observed, were in a "heavily commercialized" area, while Bel-Air is the sole commercial entity located in an area "characterized by its rural appearance."[12]

The New Hampshire Supreme Court affirmed the variance denial, summarily rejecting Bel-Air's arguments that the trial court erred by: 1) failing to find a conflict of interest; 2) failing to grant a new trial based on new evidence of a conflict; 3) finding no unnecessary hardship; and 4) finding that application of the ordinance did not violate Bel-Air's substantive due process or equal protection rights.[13]

B.    The second application

While its variance case was pending before the state Supreme Court, Bel-Air submitted an application for a sign permit to Goffstown Planning and Zoning Administrator Brian Rose.[14]  The

---

[12] Id. at 7.

[13] Bel-Air Nursing & Rehab Ctr., Inc. v. Town of Goffstown, No. 2015-0046, 2015 WL 11079675 (N.H. Dec. 9, 2015).

[14] Amended Complaint, doc. no. 10, ¶ 21.  The record is unclear as to whether this proposed sign was of the same design as the previous one for which Bel-Air sought a variance.

application proposed an electronic message center reader board comprised of LEDs, which Bel-Air described as similar to a "Lite-Brite."[15]  Although the application described the sign as externally-illuminated, Rose disagreed, and denied the application.  Bel-Air appealed to the ZBA.[16]

Before the ZBA, Bel-Air argued that the sign was externally-illuminated -- and thus allowed by the ordinance -- because the LEDs are located on the exterior surface of the sign.  It also suggested that because each LED was surrounded by a metallic sheath, it complied with the ordinance's requirement of "shielded white light."  The ZBA rejected Bel-Air's characterization of the sign as externally-illuminated, upheld Rose's decision, and subsequently denied Bel-Air's motion for reconsideration.[17]

Bel-Air also appealed this ZBA decision to the New Hampshire Superior Court.  It argued (1) that the ZBA incorrectly

---

[15] Lite-Brite is a toy that was originally sold in 1967. It consists of an internally-illuminated light box with small colored plastic pegs that fit into a panel to create a lit picture, by either using one of the included templates or creating a freeform image on a blank sheet of black paper.  Allie Townsend, All-TIME 100 Greatest Toys, Lite-Brite, Feb. 16, 2011, http://content.time.com/time/specials/packages/article/0,28804,2049243_2048656_2049112,00.html (last visited Dec. 1, 2017).

[16] Amended Complaint, doc. no. 10, ¶ 21.

[17] Id., ¶¶ 22-23.

determined that the sign was not externally illuminated (2) that the distinction between internal and external illumination is unconstitutionally vague (3) that a ZBA member had a conflict of interest; and (4) that the ZBA decision violated its equal protection rights because, on the same day it denied Bel-Air's appeal of the permit denial, it granted a variance to St. Anselm College, allowing it to install an internally-lighted sign.[18]

The Superior Court rejected all of Bel-Air's arguments.[19] First, the Court found that the sign is not externally illuminated because the light is emitted from the sign, rather than cast onto it.[20]  The Court next rejected Bel-Air's void-for-vagueness argument, relying on the New Hampshire Supreme Court's decision in Asselin, supra, which rejected a vagueness attack on a similar zoning ordinance, holding that "[a] person of ordinary intelligence reading the ordinance could understand that it proscribes all methods of sign illumination that cast light from

---

[18] Id., ¶ 29.

[19] Bel-Air Nursing & Rehab Ctr., Inc. v. Goffstown Zoning Board of Adjustment, No. 216-2015-CV-00800 (N.H. Super. May 10, 2017) (Kissinger, J.) ("Bel-Air II").

[20] Id. at 3-4.

within the sign out through the faces of the sign."[21]  The Court

also rejected Bel-Air's argument that technological changes after

Asselin was decided in 1993 warranted a different result,

observing that the "fundamental distinction between internal and

external illumination" remained unchanged, and that "regardless

of the technology used, light is either cast onto the sign or

away from or by the sign."[22]

The Superior Court also rejected the conflict of interest

charge, noting that there was no record evidence that the board

member in question or her company would benefit from the denial

of Bel-Air's permit, and observing that Bel-Air already had a

functional sign manufactured by one of her competitors and that

the ZBA decision did not prevent Bel-Air from using the

competitor to create a legally-compliant sign.[23]  Next, the Court

rejected Bel-Air's equal protection argument, finding that Bel-

Air was not similarly situated to St. Anselm, as the latter

sought a variance -- implicitly acknowledging the non-compliance

of its sign -- whereas Bel-Air sought a permit, arguing that its

---

[21] Id. at 4-5 (citing Asselin, 137 N.H. at 371).

[22] Id. at 5.

[23] Id. at 5-6.

proposed sign was compliant.[24]  Finally, the Court rejected Bel-Air's claim that the distinction between internal and external illumination violated Bel-Air's equal protection rights, as towns are permitted to make decisions based on aesthetic concerns.[25] Bel-Air did not appeal the Superior Court's permit decision.

## III. **Legal analysis**

Bel-Air's Amended Complaint sets forth four counts:  1) violation of its equal protection rights under the 14th Amendment; 2) violation of its right to due process under the 5th and 14th Amendments; 3) a civil rights claim under 42 U.S.C. § 1983 for the above constitutional rights violations; and 4) a claim for permanent injunctive relief.

The court first notes that 42 U.S.C. § 1983 is not a separate cause of action, but is instead a statutory vehicle through which a plaintiff can assert a violation of a federal right.  See Albright v. Oliver, 510 U.S. 266, 271 (1994) ("Section 1983 'is not itself a source of substantive rights,' but merely provides 'a method for vindicating federal rights elsewhere conferred.'" (quoting Baker v. McCollan, 443 U.S. 137,

---

[24] Id. at 6.

[25] Id. at 7-8.

144, n. 3 (1979)); see also, Goldblatt v. Geiger, 867 F. Supp. 2d 201, 203 (D.N.H. 2012) (citing Cruz-Erazo v. Rivera-Montanez, 212 F.3d 617, 620 (1st Cir. 2000)).  Accordingly, Count 3 must be dismissed, but this makes no practical or substantive difference to the plaintiff, as the court will construe Counts 1 and 2 as though they were properly brought pursuant to 42 U.S.C. § 1983.

Similarly, count 4 of the Amended Complaint requests injunctive relief.  As this request is not a separate cause of action, the Court will treat that count as a prayer for relief and dismiss Count 4.  See Isaacs v. Trustees of Dartmouth College, 2017 DNH 230; see also Diamond Phoenix Corp. v. Small, No. 05-79-P-H, 2005 WL 1530264, at *4 (D. Me. June 28, 2005) (noting that "[i]njunctive relief is just that, relief; it is not a separate cause of action").  With those matters resolved, the court turns to Bel-Air's constitutional claims.

A.   Equal protection

Bel-Air's equal protection claim is based on the allegation that the ZBA approved internally-illuminated sign applications submitted by St. Anselm College "and other businesses in analogous matters," but not its own.[26]

---

[26] Amended Complaint, doc. no. 10 ¶ 36.

The Equal Protection Clause of the Fourteenth Amendment requires that similarly situated persons are to receive substantially similar treatment from the government. U.S. Const., amend. XIV, § 1 ("No State shall . . . deny to any person within its jurisdiction the equal protection of the laws."); Tapalian v. Tusino, 377 F.3d 1, 5 (1st Cir. 2004). Where, as here, a plaintiff can not claim membership in a protected class or group, an equal protection claim may be based on a "class of one." Donovan v. City of Haverhill, 311 F.3d 74, 77 (1st Cir.2002) (quoting Village of Willowbrook v. Olech, 528 U.S. 562, 564 (2000) (per curiam)). When pleading an equal protection claim based on a class of one, a plaintiff must allege that it has "been intentionally treated differently from others similarly situated and that there is no rational basis for the difference in treatment." See id. (quoting Olech, 528 U.S. 562 at 564).

Without even reaching the merits of Bel-Air's equal protection claim, it is beyond dispute that it is barred by the doctrine of res judicata because the state court has already ruled that Goffstown committed no equal protection violation in denying either the variance or the permit.

"Under federal law, a state court judgment receives the same preclusive effect as it would receive under the law of the state

in which it was rendered." Dillon v. Select Portfolio Servicing, 630 F.3d 75, 80 (1st Cir. 2011). Under New Hampshire law:

> Res judicata precludes the litigation in a later case of matters actually decided, and matters that could have been litigated, in an earlier action between the same parties for the same cause of action. For the doctrine to apply, three elements must be met: (1) the parties must be the same or in privity with one another; (2) the same cause of action must be before the court in both instances; and (3) a final judgment on the merits must have been rendered in the first action.

Brooks, 161 N.H. at 690. The defendant bears the burden of establishing that res judicata bars Bel-Air claim, see Dillon, 630 F.3d at 80, and, as explained below, the defendants have done so.

First, this action and both state-court actions feature Bel-Air suing Goffstown and its ZBA. As to the second element, this litigation presents the same cause of action as the state-court proceedings. In applying res judicata, New Hampshire law defines "cause of action" to include "all rights to remedies with respect to all or any part of the transactions, or series of connected transactions, out of which the [first] action arose." Grossman v. Murray, 141 N.H. 265, 269 (1996). Here, the "series of connected transactions" giving rise to the state court proceedings were the Town's denial of the variance, and later the sign permit, followed by the Superior Court affirmance, and, in

the case of the variance, affirmance by the New Hampshire Supreme Court.

The final factor in the res judicata analysis also weighs against Bel-Air, as both state-court proceedings ended with final judgments on the merits of the same claims Bel-Air asserts here. As previously noted, the Superior Court rejected Bel-Air's equal protection claims both with respect to the variance application and the permit application, with the Supreme Court affirming the former ruling, and the latter becoming final when Bel-Air did not appeal.  In both cases, Bel-Air asserted the same grounds that it does here – that similarly situated applicants in Goffstown were treated more favorably, and in both cases, the Court ruled against it.

The only arguable difference between the issues litigated in state court and now alleged here is a technical one:  the Superior Court decided the equal protection issue on state -- rather than federal -- constitutional grounds.  The method of analysis of state equal protection claims is identical to that under the federal standard.  See In re Wintle, 146 N.H. 664, 667 (2001) ("The first question in an equal protection analysis is whether the State action in question treats similarly situated persons differently.") (citation omitted).  The analysis of

whether parties are "similarly situated" is no different.

Compare Bayson Props., Inc. v. City of Lebanon, 150 N.H. 167, 176 (2003) (rejecting property owners' equal protection claim because, inter alia, they "failed to produce evidence that any [alleged comparators] were similar in nature, location, and scope to their application"), with Barrington Cove, LP v. R.I. Hous. and Mortgage Fin. Corp., 246 F.3d 1, 8 (1st Cir. 2001) (noting that a plaintiff must demonstrate that it was similarly situated "in all relevant respects."). Moreover, res judicata bars claims that could have been raised in the earlier proceeding, including plaintiff's federal constitutional claim. Brooks v. Trs. of Dartmouth Coll., 161 N.H. 685, 690 (2011). See Casa Marie, Inc. v. Superior Court of Puerto Rico for Dist. of Arecibo, 988 F.2d 252, 262 (1st Cir. 1993) (observing that "a federal court must presume that state courts, consistent with the imperatives of the Supremacy Clause, see U.S. Const. art. VI, are fully competent to adjudicate federal constitutional and statutory claims properly presented by the parties.").

Bel-Air does not explicitly respond to Goffstown's res judicata argument. Bel-Air does not dispute that it raised constitutional (equal protection and due process) claims, and certainly does not argue that anything prevented it from

asserting the equal protection argument or claims it brings here before the state courts.  The closest it comes is a general plea that because ZBA proceedings and Superior Court reviews are somewhat limited in scope -- including a proscription on jury trials – "Bel-Air should now be given the opportunity to have judicial review . . . with the benefits of full discovery and a jury trial."[27]  Bel-Air cites no authority for this proposition, nor can the court locate any.  In fact, our Court of Appeals has cautioned that "federal courts do not sit as a super zoning board or a zoning board of appeals."  Raskiewicz v. Town of New Boston, 754 F.2d 38, 44 (1st Cir. 1985).  Accordingly, res judicata bars Bel-Air's equal protection claim.

Even if it was not barred by res judicata, Bel-Air's equal protection claim would not survive Goffstown's Motion to Dismiss. As previously noted to state an equal protection claim based on a class of one, the plaintiff must allege that it has "been intentionally treated differently from others similarly situated and that there is no rational basis for the difference in treatment."  See Donovan, 311 F.3d at 77 (quoting Olech, 528 U.S. at 564).  Bel-Air's claim falters at the first step, as its

---

[27] Pltff. Mem., doc. no. 20, at 2.

Amended Complaint fails to allege facts that support its legal conclusion that it was treated differently from a similarly situated entity.

Although the formula for determining whether certain entities are "similarly situated" is not a bright line test, Barrington Cove, 246 F.3d at 8, the First Circuit Court of Appeals has explained that "[t]he test is whether a prudent person, looking objectively at the incidents, would think them roughly equivalent and the protagonists similarly situated." Id. (citation omitted). The relevant facts to consider "are those factual elements which determine whether reasoned analogy supports, or demands, a like result." Id. (citation omitted). Thus, to satisfy the "similarly situated" element, a plaintiff must demonstrate that it was similarly situated "in all relevant respects." Id. (citation omitted). When a complaint cannot reasonably be construed to permit such a finding, dismissal is warranted. Id. "The 'similarly situated' requirement must be enforced with particular rigor in the land-use context because zoning decisions 'will often, perhaps almost always, treat one landowner differently from another.'" Cordi-Allen v. Conlon, 494 F.3d 245, 251 (1st Cir. 2007) (quoting Olech, 528 U.S. at 565 (Breyer, J., concurring)). Absent such rigor, "virtually every

zoning decision . . . would be a candidate to find its way to federal court in the guise of an equal protection claim." Id. "It is inadequate merely to point to nearby parcels in a vacuum and leave it to the municipality to disprove conclusory allegations that the owners of those parcels are similarly situated." Id.

Bel-Air's equal protection claim is based on the allegation that the ZBA approved internally illuminated sign applications submitted by St. Anselm College "and other businesses in analogous matters."[28]  The vague and conclusory reference to "other businesses in analogous matters" falls far short what is necessary to survive a motion to dismiss.  See SEC v. Tambone, 597 F.3d 436, 442 (1st Cir. 2010) (en banc) ("If the factual allegations in the complaint are too meager, vague, or conclusory to remove the possibility of relief from the realm of mere conjecture, the complaint is open to dismissal."); see also Monadnock View Holdings, LLC v. Town of Peterborough, 2006 DNH 147, 19 (Barbadoro, J.) (dismissing equal protection claim where plaintiff's unsupported reference to "similarly situated

_____

[28] Amended Complaint, doc. no. 10, ¶ 36.

businesses" failed to identify the businesses or describe how they were treated differently).

While Bel-Air does specifically allege that St. Anselm College was treated differently, the factual allegations underpinning this conclusory assertion are insufficient to defeat Goffstown's motion. First, Bel-Air was denied relief that St. Anselm was not seeking. Compare Bel-Air I (variance) with Bel-Air II (permit). This alone makes St. Anselm a poor comparator. See Cordi-Allen, 494 F.3d at 251 ("[T]he proponent of the equal protection violation must show that the parties with whom he seeks to be compared have engaged in the same activity vis-à-vis the government entity without such distinguishing or mitigating circumstances as would render the comparison inutile.").

Relatedly, while the ZBA decisions regarding Bel-Air's permit and St. Anselm's variance were issued the same day, the former was denied a permit because its sign did not comport with the sign ordinance, while the latter implicitly conceded that its sign did not meet the ordinance's requirements, and thus sought a variance. This, too, weakens Bel-Air's claim that the two entities are similarly situated. See Freeman v. Town of Hudson, 714 F.3d 29, 39 (1st Cir. 2013) (finding that plaintiff in land use case alleging an equal protection violation was not similarly

situated from a neighbor where plaintiff admitted to violating a conservation easement with which the neighbors complied).

Finally, other than the allegation that St. Anselm, like Bel-Air, is in a residential zone and received relief that Bel-Air was denied, the Amended Complaint contains no further factual information that could support an argument that the two are similarly situated, such as the aesthetics and character of the neighborhood and abutters' concerns, factors which played a significant role in the denial of Bel-Air's applications. This lack of detail further supports dismissal. The First Circuit Court of Appeals's decision in Barrington Cove, supra, is instructive. There, the court affirmed the district court's dismissal, inter alia, of an equal protection claim brought by a developer who did not receive certain tax credits that other developers received. Id. at 1-5. The district court found that the plaintiff was not similarly situated to the other developers and granted the defendant's motion to dismiss. Id. at 7-8. On appeal, the plaintiff argued that its complaint was adequate because it alleged that the plaintiff and the alleged comparators all requested the same tax credits. Id. at 8. While the Court of Appeals noted that such information was "certainly . . . material," it agreed with the district court that it was

insufficient.  Id.  The Court observed that the plaintiff alleged certain characteristics that it possessed, but failed to address whether the putative comparators possessed them.  Id.  Thus, the Court posited, "the question reduces to whether it was necessary that Barrington allege these correlations with reasonable particularity.  We conclude that it was incumbent upon Barrington to do so . . . ."  Id.; see Cordi-Allen, 494 F.3d at 252 (affirming grant of summary judgment where land-use plaintiff's allegations "fail[ed] to account for the fact that '[v]arious factual traits, circumstantial nuances, and peculiarities can set entities apart, rendering them, by virtue of their differences, amenable to disparate treatment.'") (quoting Racine Charter One, Inc. v. Racine Unified Sch. Dist., 424 F.3d 677, 681 (7th Cir. 2005)).

Here, as did the Court of Appeals in Barrington Cove, the court finds that Bel-Air has failed to "allege the[] correlations" between itself and St. Anselm "with reasonable particularity."  Thus, even if the result of the prior state court proceedings did not bar Bel-Air's equal protection claim, it has failed to plead "factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."  Martinez, 792 F.3d at 179.

B.  <u>Due Process</u>

Bel-Air's due process claim is comprised of a facial challenge to the ordinance prohibiting internally illuminated signs.[29]  Bel-Air alleges that the ordinance is unconstitutionally vague because it does not define "internal illumination."[28].

"It is a basic principle of due process that an enactment is void for vagueness if its prohibitions are not clearly defined." URI Student Senate v. Town of Narragansett, 631 F.3d 1, 13 (1st Cir. 2011) (quoting Grayned v. City of Rockford, 408 U.S. 104, 108 (1972)).  "For such a facial challenge to succeed, however, the complainant must demonstrate that the law is impermissibly vague in all of its applications." Id.  (Citation and internal quotation omitted).  To comport with the strictures of due process, a law must define an offense "'[1] with sufficient definiteness that ordinary people can understand what conduct is prohibited and [2] in a manner that does not encourage arbitrary and discriminatory enforcement.'"  Id. at 13-14 (quoting Skilling v. United States, 561 U.S. 358, 403 (2010)).

---

[29] Pltff. Obj to Motion to Dismiss, doc. 13, at 11.

[28] Amended Complaint, doc. no. 10, ¶ 45.

24

In the first instance, as recounted supra, pp. 5-9, this claim, like Bel-Air's equal protection claim, was explicitly rejected by the Superior Court and is barred by res judicata.[29] Judge Kissinger, employing New Hampshire Supreme Court authority that is directly on-point, rejected Bel-Air's argument that the phrase "internal illumination" was unconstitutionally vague. The Court observed that Asselin, supra, rejected a "void for vagueness analysis on an ordinance that stated: 'Signs shall not be illuminated from within; signs may be illuminated only by external light.'"[30] This language is almost identical to that of the Goffstown ordinance at issue here, which mandates that, within 250 feet of a residential district, signs may only be illuminated by "shielded white light" and bars "internal illumination."[31] The Court also rejected Bel-Air's argument that changes in technology called for Asselin to be ignored.[32] Id. While Asselin was decided under the state constitution, Bel-Air has provided no authority to suggest that the issue would be decided any differently under the federal constitution, nor has

---

[29] Bel-Air II, at 5.

[30] Bel-Air II, at 4 (quoting Asselin, 137 N.H. 371).

[31] Amended Complaint, doc. no. 10, ¶ 11.

[32] Bel-Air II, at 4-5.

the court located any.  Indeed, the New Hampshire Supreme Court
analyzes void for vagueness claims under the same standard as the
First Circuit Court Appeals.  Compare State v. Wilson, 169 N.H.
755, 770 (2017) ("A statute can be impermissibly vague for either
of two independent reasons:  (1) it fails to provide people of
ordinary intelligence a reasonable opportunity to understand the
conduct it prohibits; or (2) it authorizes or even encourages
arbitrary and discriminatory enforcement"), with URI Student
Senate, 631 F.3d at 13-14 (an offense must be defined with "[1]
with sufficient definiteness that ordinary people can understand
what conduct is prohibited and [2] in a manner that does not
encourage arbitrary and discriminatory enforcement.") (internal
quotation omitted).  Moreover, lack of authority notwithstanding,
res judicata bars claims which could have been asserted in prior
proceedings, such as a federal constitutional claim.  Kalil v.
Town of Dummer Zoning Bd., 159 N.H. 725, 729-30 (2010); see also
supra, n.25 (noting that federal constitutional claims can be
brought in state court).

Alternatively, the facts asserted in the Amended Complaint
to support Bel-Air's due process claim can not withstand
Goffstown's motion.  Bel-Air argues that the terms "internal" and
"external" illumination are unconstitutionally vague "because

even [the Town] is not sure what is meant by internal illumination."[33]  The court, however, agrees with the observation of the Superior Court that the "fundamental distinction . . . [is that] light is either cast onto the sign or away from or by the sign."[34]  See also Asselin, 137 N.H. at 371 ("A person of ordinary intelligence reading the ordinance could understand that it proscribes all methods of sign illumination that cast light from within the sign out through the faces of the sign.").  While the court has little doubt that there might be room for differing opinions in some cases on the question of illumination, "words are rough-hewn tools, not surgically precise instruments.  Consequently, some degree of inexactitude is acceptable in statutory language."  URI Student Senate, 631 F.3d at 14.  "'[T]he fact that a statute requires some interpretation does not perforce render it unconstitutionally vague.'"  Id. (quoting IMS Health Inc. v. Ayotte, 550 F.3d 42, 61 (1st Cir. 2008)).  Thus, even if res judicata did not bar Bel-Air's due process claim, it would nevertheless be dismissed.[35]

---

[33] Pltff. Obj., doc. no. 13, at 11.

[34] Bel-Air II, at 5.

[35] While Bel-Air's Amended Complaint referenced the ZBA member's alleged conflict of interest in connection with its due process claim, doc. no. 10, ¶ 43-44, Bel-Air also indicated in its

## IV. Conclusion

As this court noted in a factually analogous case in which plaintiffs sued local zoning officials in federal court following the denial of their application for a building permit:

> Procedural doctrines such as res judicata can be a source of great frustration to litigants, who sometimes view them as elevations of form over substance. But many of those doctrines have long occupied an important place in the law—in the case of res judicata, to ensure that "at some point litigation over the particular controversy comes to an end."

Bosonetto v. Town of Richmond, 2013 DNH 080, 1 (quoting Colebrook Water Co. v. Comm'r of Dep't of Pub. Works & Highways, 114 N.H.

---

objection to the Motion to Dismiss that its due process claim "is comprised of a facial challenge" to the Goffstown ordinance. Doc. no. 13, at 11. Its objection only included the alleged conflict as evidence of bad faith in support of its equal protection claim. Id. at 7-9. While the court did not reach the conflict issue in its equal protection analysis because Bel-Air failed to allege that it was treated differently than a similarly situated comparator, both Superior Court decisions explicitly rejected the conflict-of-interest contention. Bel-Air I, at 4; Bel-Air II, at 5-6. As such, regardless of whether Bel-Air is asserting the alleged conflict as support for its equal protection count, its due process count, or both, Bel-Air is collaterally estopped from re-arguing the finding that there was no conflict of interest. See Warren v. Town of East Kingston, 145 N.H. 249, 252 (2000) (holding that collateral estoppel bars a party from re-litigating any matter actually litigated in a prior action involving that party).

392, 395 (1974)), aff'd, No. 13-1987 (1st Cir. Apr. 22, 2014).

So it is here.  The preclusive effects of the state court

proceedings are clear.  Defendants' Motion to Dismiss[36] is

GRANTED.

**SO ORDERED.**

_____
Joseph N. Laplante
United States District Judge

Dated:  January 2, 2018

cc:  Kristin H. Sheppe, Esq.
     Matthew R. Braucher, Esq.
     Brian J.S. Cullen, Esq.

---

[36] Doc. no. 11.